# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| DAVID BRABHAM, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CV405-171 |
| | ) | |
| TYDUS MEADOWS, Warden, | ) | |
| | ) | |
|     Respondent. | ) | |

## REPORT AND RECOMMENDATION

David Brabham has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, the Court recommends that the petition be **DENIED**.

## I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 28, 1999, a Chatham County jury convicted Brabham on charges of armed robbery and false imprisonment. Doc. 1. The state brought those charges after Brabham robbed a pharmacy in Garden City, Ga. on May 13, 1998. To effect the robbery, Brabham placed a garbage bag over his right hand, entered the pharmacy, approached the

pharmacist on duty and pointed the bag-covered hand at him, told him he had a gun, and ordered him onto the floor. See Brabham v. State, 524 S.E.2d 1 (1999). He then demanded to know where the pharmacy stored its hydrocodone. Doc. 1 attachs. A & C. Upon leaving the scene, a bystander wrote down the license tag number of Brabham's car, which allowed the police to track him down. Id. About a week after the incident, the pharmacist wrote a two-page statement for the police stating that Brabham's "right hand was in a garbage bag as if he had a gun pointing at me. He demanded that I get on the floor and that he had a gun . . . ." Id.

After his May 1998 arrest for the robbery, Brabham hired attorney William O. Cox to conduct his defense. Id. But in December 1998 Cox withdrew because Brabham had stopped making payments for his services. The state trial court then appointed Gary Newberry to represent Brabham. Id. The relationship between Newberry and Brabham began poorly and never improved. Before meeting Brabham, Newberry interviewed the pharmacist, who told Newberry that he would testify that Brabham had told him that he had a gun. Because Brabham was a recidivist offender, an armed robbery conviction would result in an

automatic life sentence, so during his initial meeting with Brabham on January 5, 1999, Newberry advised Brabham to accept a plea agreement that would result in a ten-year sentence. Brabham became angry with Newberry and asked him to leave the jail where the meeting was taking place.

Newberry complied with Brabham's request but maintained contact with him through telephone and letters. The letters, drenched in sarcasm, reveal the extent of the hostilities between Newberry and Brabham. Doc. 1. attach. B. Apparently, Brabham made repeated threats to file grievances against Newberry with the state bar association and to replace Newberry with another attorney who could secure a not guilty verdict. Id.

The letters also reveal Newberry's frustration with Brabham's failure to help him articulate a defense theory. During the month before Brabham's trial, Newberry repeatedly counseled Brabham to accept a plea agreement. Id. Brabham did not want to plead guilty. Instead, he wanted Newberry to obtain discovery demonstrating that (1) he was not in a proper mental state when the crime occurred because he was addicted to pain pills, and that (2) he was never actually in possession of

a firearm during the crime.  Id.  Brabham felt those two factors would preclude a guilty verdict on charges of armed robbery.  Newberry responded to Brabham's discovery requests with sarcastic letters explaining that (1) evidence of the psychological effects of Brabham's drug addiction would not nullify the mens rea element of armed robbery under Georgia law and would only be admissible at sentencing and that (2) the "armed" element of Georgia's armed robbery statute is satisfied if the victim perceived that the assailant was armed, thereby nullifying Brabham's argument that he was not actually carrying a gun when he robbed the pharmacy.  Id.

As trial approached, Newberry wrote yet another tersely worded letter informing Brabham that unless he either had a change of heart about pleading guilty or offered information to develop a stronger theory of defense, counsel intended to concede the armed robbery charge and to contest the other charges of kidnapping and possession of a firearm by a convicted felon.

Brabham never provided any facts to develop a theory of defense on the armed robbery charge.  On the Friday preceding his Monday, February 1, 1999 trial, Brabham moved for a continuance and new

counsel, informing the state court judge that his family had collected enough money to retain a new defense attorney. The judge denied that motion, finding that Brabham simply wanted to delay the trial and that Newberry was adequately prepared to conduct Brabham's defense. Doc. 1 attach. A.

At trial, Newberry presented the defense that he had outlined to Brabham, conceding that Brabham had committed the robbery but contesting whether Brabham actually kidnapped the pharmacist and whether Brabham had a firearm. Newberry's presentation was not flawless. While cross-examining the pharmacist about whether Brabham had ever stated that he had a gun, Newberry confronted the pharmacist with a copy of the statement the pharmacist had given to the state law enforcement officers and asked him why he never told those officers that Brabham said he had a gun. The pharmacist immediately pointed out a sentence in the statement where he had indeed written that Brabham had said "he had a gun." Doc. 1 attach. A. At the state habeas corpus proceeding, Newberry testified that the statement was difficult to read and that both he and Brabham had not noticed the incriminating statement when they reviewed the document. The state habeas court

noted that the statement was printed from a fax machine and was written on a part of the paper that had been folded. Doc. 1. attach. C.

Brabham also alleges that at the trial Newberry admitted into evidence a photo line-up sheet in which the pharmacist had identified Brabham as the robber and had written: "I am 80% certain because this was my second armed robbery." Brabham now claims that the jury could have inferred from this statement that the pharmacist was stating that it was the second time Brabham had robbed the pharmacy. Doc. 1 attach. A. In addition, Brabham waived his right against self-incrimination and testified. On the stand he placed his own character at issue by admitting prior crimes and confessing that he was currently in jail.

Although Brabham was convicted of armed robbery, Newberry's trial strategy worked. The jury did not find Brabham guilty of kidnapping. Instead, the jury convicted him of a lesser included offense, false imprisonment. And the jury issued a not guilty verdict on the charge of being a felon in possession of a firearm. Those victories were of little benefit to Brabham, however. His status as a recidivist meant that the trial judge was obligated by Georgia law to give him a life sentence for the armed robbery conviction.

Brabham appealed his convictions and sentence, which were affirmed on October 21, 1999. Brabham, 524 S.E.2d 1. He did not file a petition for certiorari with the state supreme court. Doc. 1. He did, however, file a state habeas corpus petition in Tattnall County on October 25, 2000. Id. attach. C. The habeas corpus court denied relief on February 24, 2004. Id. Then, on October 25, 2004, the Georgia Supreme Court denied his application for a certificate of probable cause to appeal the denial of state habeas corpus relief. Doc. 1 attach. D. He filed this petition for a writ of habeas corpus on September 15, 2005, claiming that he (1) received ineffective assistance from his trial counsel, (2) received ineffective assistance from his appellate counsel, and (3) was deprived of his Sixth Amendment right to choose his counsel. Doc. 1.

## II.  ANALYSIS

### A.  LEGAL FRAMEWORK

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court held that a federal court applying the "unreasonable application" clause of § 2254(d)(1) "should ask whether the state court's application of clearly established federal law was *objectively* unreasonable." <u>Id.</u> at 410 (emphasis added). The Supreme Court emphasized that a federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. Accordingly, under this standard of review, a federal court may not grant habeas relief based on its mere disagreement with the state court's decision because "[t]his would amount to <u>de novo</u> review, which Congress clearly did not intend." <u>Neelley v. Nangle</u>, 138 F.3d 917, 924 (11th Cir. 1998); <u>see</u> H.R. Conf. Rep. No. 518, at 111 (1996), <u>reprinted in</u> 1996

U.S.C.C.A.N. 944, 944 (indicating that § 2254(d)(1) "requires deference to the determinations of state courts that are neither 'contrary to,' nor an 'unreasonable application of,' clearly established federal law").

With these considerations in mind, the Court will now turn to Brabham's asserted grounds for relief.

### B.   CLAIMS ONE AND THREE ARE PROCEDURALLY DEFAULTED

During the state habeas proceeding, Brabham raised his claims for ineffective assistance of trial counsel and deprivation of his Sixth Amendment right to choose his own trial counsel.  Doc. 1 attach. C.  But the state habeas court found both claims procedurally defaulted under Georgia law because Brabham (1) did not raise them at trial or on direct appeal and (2) had shown neither cause for nor prejudice from his failure to raise those issues.  Id.; see White v. Kelso, 401 S.E.2d 733 (Ga. 1991) (holding that claims of ineffective assistance of trial counsel are waived if not raised at first possible stage of post-conviction review, unless defendant shows cause and prejudice or miscarriage of justice); Gaither v. Gibby, 475 S.E.2d 603, 604 (Ga. 1996) ("[A]ny issue that could have

been raised in that appeal but was not, is procedurally barred from consideration in habeas corpus proceedings absent a showing of adequate cause for the failure to raise it earlier and a showing of actual prejudice.").

Supreme Court precedent requires that federal courts respect state-court procedural default rulings. In <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991), the Supreme Court held that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Id.</u> at 750. Applying the <u>Coleman</u> Court's holding, the Eleventh Circuit has stated that a § 2254 petitioner who fails to properly raise his federal claims in state court is "procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing <u>Wainwright v.Sykes</u>, 433 U.S. 72, 87 (1977)). "Such procedural default can arise two ways. First, where the state court correctly applies

a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, <u>Sykes</u> requires the federal court to respect the state court's decision." <u>Id.</u> (citing <u>Atkins v. Singletary</u>, 965 F.2d 952, 956 (11th Cir. 1992)). This occurs when "the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, <i>i.e.</i>, an adequate and independent state ground." <u>Id.</u> at 1303 (citing <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989)).

"Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." <u>Id.</u> (citing <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir. 1998)). To determine whether a claim is procedurally barred in this manner, the federal court must "ask whether any attempt [the petitioner] now makes to exhaust his claims in [state] courts would be futile under [the state's] procedural default doctrine." <u>Id.</u>

In this case, the state habeas court applied a state procedural bar rule in refusing to entertain Brabham's first and third claims. Doc. 1

attach. C at 3, 16. Because those claims are barred by a state procedural default rule, this Court will also be barred from hearing them unless Brabham can demonstrate that he qualifies for an exception to this rule. See Bailey, 172 F.3d at 1302; see also Sims v. Singletary, 155 F.3d 1297, 1311 (11th Cir. 1998) ("A federal court must dismiss those claims or portions of claims that are procedurally barred under state law." (citations omitted)). To qualify for an exception, Brabham must demonstrate either "cause and prejudice" for his state court procedural default or that he is "actually innocent." Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991).

The Court finds neither cause nor prejudice. Cause is not present because Brabham's counsel on direct appeal knew of Brabham's rocky relationship with his trial counsel and knew that Brabham had attempted to retain other counsel immediately before trial, but appellate counsel chose not to raise those issues on appeal. Doc. 1 attach. C. Furthermore, Brabham was not prejudiced by his appellate counsel's failure to raise either of those issues because they had no substantial impact on the outcome of the trial. Despite his sarcastic tone, Brabham's trial counsel correctly surmised that the government's witness, the

pharmacist, would testify that Brabham was the man who robbed his place of business, and his trial counsel was also correct that Brabham could defeat the firearms charges (which he did). In fact, had Brabham accepted his counsel's advice to plead guilty, he would have received a ten-year sentence instead of a mandatory life sentence.

In addition, there is no evidence that Brabham is actually innocent of the charges. Therefore, the Court should **DENY** Brabham's first and third claims as procedurally defaulted.

## C.  CLAIM TWO RAISES NO ISSUES MERTIING ISSUANCE OF A WRIT OF HABEAS CORPUS

Brabham alleges multiple instances of ineffective assistance from appellate counsel. The first alleged instance involves counsel's failure to file a notice of intent to petition for certiorari with the Georgia Supreme Court following the appellate court decision affirming Brabham's conviction. However, Brabham did not raise this specific allegation of ineffective assistance of appellate counsel in his state habeas petition.[1]

---

[1] The Court notes that Brabham did raise ineffective assistance of appellate counsel in his state habeas corpus petition. However, he did not raise this specific factual claim. It is the specific factual claim, not the general claim of ineffectiveness, that must be presented to the state court to avoid procedural default. <u>See</u> <u>Picard v.</u>

Under Georgia's successive petition rule, a petitioner is required to raise all grounds for relief in his initial or amended state habeas petition. O.C.G.A. § 9-14-51. Any grounds not raised are considered defaulted, unless state or federal constitutional law requires review or unless the claim could not have reasonably been raised in the original petition. Id. In Chambers v. Thompson, 150 F.3d 1324 (11th Cir. 1998), the Eleventh Circuit made clear that:

> The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question "could not reasonably have been raised in the original or amended [state habeas] petition."

Id. at 1327. As Brabham has presented no excuse for his failure to raise this issue in his state habeas proceeding, this particular claim should be **DENIED** as procedurally barred.

Brabham also alleges several other instances of ineffective assistance of appellate counsel that were presented to the state habeas court. Doc. 1 attach. A. More specifically, Brabham alleges ineffective assistance where his appellate counsel neither questioned the trial

Connor, 404 U.S. 270, 275–76 (1971); Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007); McNair v. Campbell, 416 F.3d 1291, 1302–03 (11th Cir. 2005).

court's denial of Brabham's request for a continuance nor argued for reversal based on trial counsel's erroneous reading of the pharmacist's written statement. Id.

Instead, appellate counsel raised only two issues, which Brabham characterizes as "patently frivolous": (1) that there was insufficient evidence to support his conviction; and (2) that the recidivist sentencing statute constituted cruel and unusual punishment and violated the Separation of Powers doctrine. Id. Despite the apparent weaknesses of these two grounds, appellate counsel testified at the state habeas corpus hearing that he did not raise the issues of ineffectiveness of trial counsel or the denial of the continuance because he did not think they had a good chance of winning. Id.

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a petitioner must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Second, a petitioner must demonstrate that the defective

performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. Id.

Under the first prong, deficient performance is "that which is objectively unreasonable and falls below a wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). The reasonableness of the attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Supreme Court has held that the same Strickland test applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535–36 (1986). In Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." Id. at 751–52. "[A] deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstances that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of its criminal cases." Smith, 477 U.S. at 537.

The record indicates that the state court applied the Strickland test. Doc. 1 attach. C. It found that appellate counsel, having discussed the case with Brabham, Brabham's family, and Brabham's trial counsel, "considered raising ineffectiveness of trial counsel, but did not think that trial counsel's conduct rose to the very stringent standards of

ineffectiveness." Id. Further, the court found that appellate counsel saw no need for a continuance and believed that Brabham and trial counsel had discussed Brabham's testimony. Id.

Appellate counsel considered raising those claims, and Brabham has provided no evidence to "overcome the presumption" that appellate counsel's decision to focus on two other grounds for appeal "might be considered sound trial strategy." Strickland, 466 U.S. at 689. The state habeas court held that "[t]he allegations of ineffective assistance of trial counsel are meritless; therefore, [p]etitioner has not proven that appellate counsel erred in not raising them or that there is a reasonable probability they would have changed the result of the appeal." Doc. 1 attach. C.

Based on its application of the relevant Supreme Court precedent, the state habeas court determined that Brabham had not satisfied either prong of the Strickland analysis, as he failed to show that appellate counsel's decisions were "unreasonable," or that counsel's failure to raise these claims prejudiced him. Id. Accordingly, the state court denied relief on these grounds. Id. After review of the evidentiary record of the case, this Court finds the state appellate court's determination to be a

reasonable one. Petitioner has failed to overcome the presumption of effectiveness in his appellate counsel's development of appellate strategy. Petitioner failed to show either error or prejudice. Therefore, this Court may not disturb that finding. Thus, petitioner is not entitled to habeas relief as to this claim.

## III. CONCLUSION

For the foregoing reasons, the Court finds that petitioner fails to state grounds on which § 2254 relief may be granted. Accordingly, Brabham's petition should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 2nd day of November, 2007.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**